UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOSEPH CARUSO | : CIVIL CASE NO. 3:22-CV-01391-JAM |
| v. | : |
| CITY OF HARTFORD, INDEPENDENT AUDIT COMMISSION | : JANUARY 19, 2023 |

## AMENDED COMPLAINT

During the course of his employment as a Deputy Chief Auditor, Joseph Caruso was subjected to a hostile, harassing, discriminatory, disparate and retaliatory work environment following his complaints alleging violations of the City's Affirmative Action and Equal Employment Opportunity Policies, threatened and retaliated against for his use of family and medical leave, in violation of the Family and Medical Leave Act, and was terminated from his employment in retaliation for requesting a reasonable accommodation, in violation of the Americans with Disabilities Act. He therefore brings this case.

## THE PARTIES

1. Joseph Caruso (hereinafter "Plaintiff"), is a disabled individual (mental disabilities) and an individual of the full age of majority and a citizen of the State of Connecticut, who resides in Coventry, CT.

2. The City of Hartford, Independent Audit Commission ("Defendant" and/or "IAC"), is located at 550 Main Street, Hartford, CT 06103. Defendant was the Plaintiff's principal employer and is an employer as defined under Title VII, FMLA, ADA and C.G.S. §46a-60.

# ADMINISTRATIVE HISTORY AND EXHAUSTION OF ADMINISTRATIVE REMEDIES

3. Plaintiff filed timely claims of discrimination with the Connecticut Commission on Human Rights and Opportunities ("CHRO"), claim number 2130058, which was duly filed with the Equal Employment Opportunity Commission ("EEOC"), claim number 16A-2020-01340, against Defendant. Plaintiff received a release of jurisdiction from EEOC on October 11 and from CHRO on October 7.

# FACTUAL BACKGROUND
(Relevant to all Counts)

4. Plaintiff was employed by the City of Hartford's Independent Audit Commission as an Auditor on June 1, 2010, and promoted to the position of Deputy Chief Auditor on November 20, 2017.

5. Plaintiff's supervisor, Craig Trujillo, was and is the Chief Auditor for the City of Hartford's Independent Auditor's Commission.

6. On February 27, 2020, Caruso filed a complaint against Trujillo, alleging violations of the City's Affirmative Action and Equal Employment Opportunity policies, for harassment, time theft, creation of a toxic workplace environment, and retaliation.

7. Plaintiff's complaints included:

   a. Mr. Trujillo's use of the restroom within the Audit Office with the door open while IAD staff were present in the office;

   b. On the job theft of time with extended lunch breaks and early departures;

   c. Creating a hostile, harassing and toxic work environment by making disparaging, implied and veiled threats when speaking on matters directly related to Internal Audit Department staff members;

        d.    Retaliation and threats by Trujillo in response to Plaintiff's filed complaints.

8. As a direct result of the hostile and threatening work environment and the resulting stress, anxiety and panic attacks it caused the Plaintiff to suffer, on February 28, 2020, Plaintiff's doctor placed him on a medical leave of absence under FMLA until March 26, 2020. Upon Plaintiff's FMLA request, Trujillo threatened Plaintiff that if he took a medical leave of absence, he would terminate his employment.

9. Defendant retained a third party attorney to investigate Plaintiff's February 7, 2020, complaints which on March 4, 2020, concluded that although Plaintiff's allegations were substantiated, he failed to make out a prima facie claim of workplace discrimination or hostile work environment.

10. On June 19, 2020, Defendant Human Resources, Thulani Le Grier (hereinafter "Le Grier") issued a Memorandum to Defendant Internal Audit Commission indicating that he was not in agreement with the third party findings and stated that it was the firm opinion of the City of Hartford Human Resources Department that there was sufficient evidence to support Plaintiff's complaints and allegations specific to workplace behavior, and toxic work environment directly attributable to the workplace misconduct of Mr. Trujillo.

11. On June 24, 2020, in an email between Le Grier and the Internal Audit Commissioners, Le Grier indicated he would typically fire someone for such allegations of workplace misconduct, and recommended Trujillo be removed as chief auditor. The Defendant Internal Audit Commission took no steps to terminate Trujillo.

12. Despite Trujillo's threats of termination, Plaintiff did go out on a medical leave of absence under FMLA and upon his return back to work, he continued to be subjected to

harassment and retaliation by Trujillo and filed a second complaint against Trujillo on June 29, 2020.

13. That June 29, 2020, complaint detailed how Trujillo had manipulated Plaintiff's professional responsibilities, usurped his authority as deputy auditor, diminished his substantive duties, job responsibilities and authorities, including Trujillo notifying the audit team that upon Plaintiff's return he would be assigned all administrative work and advising Plaintiff that all of Plaintiff's audits and reports in progress were now under Trujillo and that Plaintiff did not have to be involved in them.

14. Defendant once again obtained the services of a third party investigator to perform an independent investigation, which concluded that because the Plaintiff had not suffered any adverse employment actions, he did not establish a prima facie claim of retaliation.

15. On August 10, 2020, Plaintiff again met with La Grier to discuss the ongoing retaliation by Trujillo, indicating that it was directly affecting Plaintiff's mental health. In a cry for help, Plaintiff verbally explained to La Grier that the ongoing retaliation and toxic work environment was physically and mentally affecting the Plaintiff and as a figure of speech he told La Grier that it was so severe that he could potentially punch Trujillo in the jaw.

16. As a result of Defendant's reluctance to address Trujillo's actions, on August 11, 2020, Plaintiff submitted a doctor's note and made a formal request to the City's Benefits Division that he be allowed to work remotely from home because Trujillo's behaviors were exacerbating his mental health issues.

17. On August 17, 2020, Plaintiff submitted FMLA documentation to support his request to work from home.

18.     On August 19, 2020, Plaintiff received an email from Commissioner Ted See. He advised Plaintiff that in order for Plaintiff's accommodation request to be granted, he must submit his accommodation request to the entire Audit Commission. Ted See in a retaliatory attack upon the Plaintiff, accused Plaintiff of declining work assigned to him by Trujillo. Later that same day, Plaintiff received an email from Commissioner Bruce Rubenstein calling Plaintiff a liar about not declining work from Trujillo and advising Plaintiff "I don't know why the department even needs a Deputy Auditor anymore."

19.     On August 20, 2020, Plaintiff forwarded his doctor's note and the email he received from Bruce Rubenstein to Corporate Counsel and La Grier in Human Resources notifying them if the retaliation did not stop, he would be forced to take legal action.

20.     La Grier did not address Plaintiff's August 20, 2020, email. Instead, in an egregious act of disability discrimination and retaliation, on August 28, 2020, La Grier issued an interoffice Memorandum to the Internal Audit Department stating that Plaintiff was an observed risk for potential workplace violence that could be directed at them.

21.     On September 2, 2020, Plaintiff submitted his ADA Medical Certification form for workplace accommodations.

22.     Although Plaintiff and his treating physician submitted sufficient documentation regarding Plaintiff's disabilities and need for accommodations, on September 8, 2020, Plaintiff was notified that his documentation was not sufficient regarding his claimed disability to determine what accommodations would allow the Plaintiff to perform the essential functions of his position and notified Plaintiff that they would be seeking out additional information from Plaintiff's treating physician.

23. On October 9, 2020, Plaintiff attended a zoom meeting with Le Grier and Melvin Gonzalez, Human Resources Analyst. As a result of Le Grier's discriminatory and retaliatory August 28, 2020, email designating Plaintiff as a risk for workplace violence, Plaintiff maintained a recording of that meeting. During that meeting La Grier informed Plaintiff that his request for accommodation and his ADA paperwork constituted a resignation and that they were accepting Plaintiff's resignation effective immediately.

24. Le Grier further threatened that if Plaintiff did not send him a formal resignation letter, Plaintiff would be considered resigned/terminated in bad standing. Plaintiff informed Le Grier that he was not resigning from his position.

25. Pursuant to Municipal Code 2-410, Defendant Human Resources held no authority to subject Plaintiff to a termination of his employment, only the appointing authority (Commission) could take steps to terminate, including being provided with 5 days' notice, a written explanation for the termination, and the opportunity to appeal that determination. Plaintiff was not provided with any notice or written explanation, he was just summarily terminated and within minutes of that video call, Plaintiff's city credentials were disabled.

26. On October 10, 2020, Trujillo sent out an email informing the Audit Department "Yesterday, October 9, 2020, between 3:20 PM and 3:40 PM, Mr. Caruso's employment as Deputy Chief Auditor with the City of Hartford was separated by HR Director Thulani La Grier via video conference in the presence of Melvin Gonzales (HR) and myself in the HR Dept."

27. Plaintiff received an official termination letter from the Defendant dated January, 15, 2021.

**COUNT ONE**
**VIOLATION OF DUE PROCESS CLAUSE OF 14TH AMENDMENT**

1-27. Plaintiff repeats and realleges each and every allegation set forth above in paragraphs 1 through 27 with the same force and effect as if more fully set forth herein.

28. The actions of the Defendant deprived Plaintiff of a protected property or liberty interest.

29. Pursuant to the City of Hartford's Municipal Code 2-410, Plaintiff held a property and liberty interest in his position as Deputy Chief Auditor, including termination only by the appointing authority, a guarantee five (5) day notice prior to termination, a written description for the reason(s) for the termination and a full opportunity to appeal that decision.

30. Plaintiff's termination was not issued by the appointing authority.

31. Plaintiff's termination did not include a five (5) day notice period.

32. Plaintiff was not issued a written description for the reason(s) for his termination and was denied the ability for a full opportunity to appeal that decision.

33. Plaintiff has suffered and will continue to suffer injuries and losses as a result of Defendant's wrongful acts.

34. As a result of said actions, Plaintiff has suffered damages and is entitled to recover all relief available under state and federal statute, including punitive damages and attorney fees.

**COUNT TWO**
**DISCRIMINATION IN VIOLATION OF ADA - TITLE 42 U.S.C. §12101*et. seq.***

1-27. Plaintiff repeats and realleges each and every allegation set forth above in paragraphs 1 through 27 with the same force and effect as if more fully set forth herein.

28. Plaintiff is a disabled individual who suffers from mental disabilities, including anxiety and panic disorder.

29. At all times relevant, Defendant was fully aware and knowledgeable of Plaintiff's disabilities.

30. On August 11, 2020, Plaintiff submitted a doctor's note and made a formal request to the City's Benefits Division that he be allowed to work remotely from home because Trujillo's behaviors were exacerbating his mental health issues.

31. On August 17, 2020, Plaintiff submitted FMLA documentation to support his request to work from home.

32. Defendant thereafter sent out an Internal Memo designating Plaintiff's mental health issues as a safety risk to the Internal Audit Department personnel.

33. Defendant did not engage in any interactive process with the Plaintiff relating to his request for accommodations and instead on August 18, 2020, Plaintiff received an email from Commissioner Bruce Rubenstein advising Plaintiff "I don't know why the department even needs a Deputy Auditor anymore."

34. On August 28, 2020, La Grier issued an interoffice Memorandum to the Internal Audit Department stating that Plaintiff was an observed risk for potential workplace violence.

35. On September 2, 2020, Plaintiff submitted his ADA Medical Certification form for workplace accommodations.

36. Although Plaintiff and his treating physician submitted sufficient documentation regarding Plaintiff's disabilities and need for accommodations, on September 8, 2020, Plaintiff was notified that his documentation was not sufficient regarding his claimed disability to

determine what accommodations would allow the Plaintiff to perform the essential functions of his position.

37. Defendant advised Plaintiff that it intended to seek additional information from Plaintiff's doctor and while that was in progress, Plaintiff would be allowed to work remotely.

38. On October 9, 2020, Plaintiff attended a zoom meeting with Le Grier and Melvin Gonzalez, Human Resources Analyst wherein La Grier informed Plaintiff that his request for accommodation and his ADA paperwork constituted a resignation and Plaintiff was terminated.

39. Plaintiff has suffered and will continue to suffer injuries and losses as a result of Defendant's wrongful and discriminatory acts.

40. As a result of said actions, Plaintiff has suffered damages and is entitled to recover all relief available under the federal statute, including punitive damages and attorney fees.

**COUNT THREE**
**HOSTILE WORK ENVIRONMENT IN VIOLATION OF ADA - TITLE 42 U.S.C. §12101***et. seq.*

1-27. Plaintiff repeats and realleges each and every allegation set forth above in paragraphs 1 through 27 with the same force and effect as if more fully set forth herein.

28. Plaintiff is a disabled individual who suffers from mental disabilities, including anxiety and panic disorder.

29. At all times relevant, Defendant was fully aware and knowledgeable of Plaintiff's disabilities.

30. Defendant was aware and knowledgeable that Trujillo had created a hostile work environment and Defendant's Human Resources concurred that Trujillo's actions were of the sort that would normally result in a termination of employment.

9

31. Defendant did not terminate Trujillo and instead maintained a workplace so unbearable that it was impossible for the Plaintiff to do his job.

32. As a direct result of Defendant's negligence, it created a hostile work environment that directly affected the terms, conditions and privileges of Plaintiff's employment.

**COUNT FOUR**
**FAILURE TO ACCOMMODATE IN VIOLATION OF ADA - TITLE 42 U.S.C. §12101 *et seq.***

1-27. Plaintiff repeats and realleges each and every allegation set forth above in paragraphs 1 through 27 with the same force and effect as if more fully set forth herein.

28. Plaintiff is a disabled individual who suffers from mental disabilities, including anxiety and panic disorder.

29. At all times relevant, Defendant was fully aware and knowledgeable of Plaintiff's disabilities.

30. On August 11, 2020, Plaintiff submitted a doctor's note and made a formal request to the City's Benefits Division that he be allowed to work remotely from home because Trujillo's behaviors were exacerbating his mental health issues.

31. On August 17, 2020, Plaintiff submitted FMLA documentation to support his request to work from home.

32. Defendant thereafter sent out an Internal Memo designating Plaintiff's mental health issues as a safety risk to the Internal Audit Department personnel.

33. Defendant did not engage in any interactive process with the Plaintiff relating to his request for accommodations and instead on August 18, 2020, Plaintiff received an email from Commissioner Bruce Rubenstein advising Plaintiff "I don't know why the department even needs a Deputy Auditor anymore."

34. On August 28, 2020, La Grier issued an interoffice Memorandum to the Internal Audit Department stating that Plaintiff was an observed risk for potential workplace violence that could be directed at them.

35. On September 2, 2020, Plaintiff submitted his ADA Medical Certification form for workplace accommodations.

36. On September 8, 2020, Plaintiff was notified that his documentation was not sufficient regarding his claimed disability to determine what accommodations would allow the Plaintiff to perform the essential functions of his position and Defendant advised Plaintiff that it intended to seek additional information from Plaintiff's doctor and while that was in progress, Plaintiff would be allowed to work remotely.

37. On October 9, 2020, Plaintiff attended a zoom meeting with Le Grier and Melvin Gonzalez, Human Resources Analyst wherein La Grier informed Plaintiff that his request for accommodation and his ADA paperwork constituted a resignation and Plaintiff was terminated.

38. Plaintiff has suffered and will continue to suffer injuries and losses as a result of Defendant's wrongful and discriminatory acts.

39. As a result of said actions, Plaintiff has suffered damages and is entitled to recover all relief available under the federal statute, including punitive damages and attorney fees.

**COUNT FIVE**
**RETALIATION IN VIOLATION OF THE ANTI-RETALIATION PROVISIONS OF TITLE 42 U.S.C. §12101 *et seq.***

1-27. Plaintiff repeats and realleges each and every allegation set forth above in paragraphs 1 through 27 with the same force and effect as if more fully set forth herein.

28. Plaintiff is a disabled individual who suffers from mental disabilities, including anxiety and panic disorder.

29. At all times relevant, Defendant was fully aware and knowledgeable of Plaintiff's disabilities.

30. As a direct result of Plaintiff's request for accommodations for his known disability, Plaintiff was intimidated, threatened, and terminated for exercising his rights protected under the ADA.

31. Plaintiff has suffered and will continue to suffer injuries and losses as a result of Defendant's wrongful and discriminatory acts.

32. As a result of said actions, Plaintiff has suffered damages and is entitled to recover all relief available under the federal statute, including punitive damages and attorney fees.

**COUNT SIX**
**DISCRIMINATION IN VIOLATION OF C.G.S. 46A-60(b)(1) - DISABILITY DISCRIMINATION / FAILURE TO ACCOMMODATE / RETALIATORY DISCHARGE**

1-27. Plaintiff repeats and realleges each and every allegation set forth above in paragraphs 1 through 27 with the same force and effect as if more fully set forth herein.

28. Plaintiff is a disabled individual who suffers from mental disabilities, including anxiety and panic disorder.

29. At all times relevant, Defendant was fully aware and knowledgeable of Plaintiff's disabilities.

30. On August 11, 2020, Plaintiff submitted a doctor's note and made a formal request to the City's Benefits Division that he be allowed to work remotely from home because Trujillo's behaviors were exacerbating his mental health issues.

31. On August 17, 2020, Plaintiff submitted FMLA documentation to support his request to work from home.

32. On September 2, 2020, Plaintiff submitted his ADA Medical Certification form for workplace accommodations.

33. On September 8, 2020, Defendant advised Plaintiff that it intended to seek additional information from Plaintiff's doctor and while that was in progress, Plaintiff would be allowed to work remotely.

34. Thereafter Defendant did not engage in any further discussions or pursue any interactive process with the Plaintiff relating to his request for accommodations.

35. On October 9, 2020, Plaintiff attended a zoom meeting with Le Grier and Melvin Gonzalez, Human Resources Analyst wherein La Grier informed Plaintiff that his request for accommodation and his ADA paperwork constituted a resignation and that they were accepting Plaintiff's resignation effective immediately.

36. Plaintiff has suffered and will continue to suffer injuries and losses as a result of Defendant's wrongful and discriminatory acts.

37. As a result of said actions, Plaintiff has suffered damages and is entitled to recover all relief available under the state statute, including punitive damages and attorney fees.

**COUNT SEVEN**
**VIOLATION OF FMLA – 29 U.S.C. §2601**

1-27. Plaintiff repeats and realleges each and every allegation set forth above in paragraphs 1 through 27, with the same force and effect as if more fully set forth herein.

28. Plaintiff had been employed for more than one year, and had worked more than 1250 hours in the 12 month period preceding his request for family medical leave.

29. The plaintiff was an employee as defined in 29 U.S.C. §2611.

30. The defendant was an employer as defined in 29 U.S.C. §2611.

31. The aforesaid acts of harassment and hostility engaged in by the Defendants toward the Plaintiff were done with discriminatory intent and in retaliation for the Plaintiff exercising his rights to take Family Medical Leave, all in violation of 29 U.S.C. §2614 and §2615.

32. The aforesaid acts of harassment and hostility engaged in by the Defendant interfered with the Plaintiff's right to FML.

33. Trujillo's threat to the Plaintiff that if he went out on FMLA leave, he will be terminated interfered with and retaliated against the Plaintiff for exercising his rights to take Family Medical Leave, in violation of 29 U.S.C. §2614 and §2615.

34. Defendant's actions of terminating the Plaintiff following his August 17, 2020, submission of his FMLA documentation to support his request to work from home, was in violation of 29 U.S.C. §2614 and §2615.

35. As a result, the Plaintiff is entitled to recover monetary and statutory damages pursuant to 29 U.S.C. §2617.

## **Prayer for Relief**

Wherefore Plaintiff claims the following:

1. Money damages;

2. Costs;

3. Punitive damages, attorney's fees and expert witness fees;

4. Prejudgment interest;

5. That this Court retain jurisdiction over this matter;

6. Trial by jury;

7. Such other relief as the Court deems just, fair and equitable.

PLAINTIFF

By: __/s/__ Alexander T. Taubes
Alexander T. Taubes
470 James Street
Suite 007
New Haven, CT 06513
(203) 909-0048
alextt@gmail.com
CT30100